IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAUREEN DESMANGLES,<br><br>        Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL, Commissioner<br>Of Social Security,<br><br>        Defendant. | Case No. 20 C 3039<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

For the reasons stated herein, the Court denies the Commissioner's motion for summary judgment (Dkt. No. 19), vacates the findings of the Administrative Law Judge and remands to the Social Security Administration for proceedings consistent with this opinion. The Clerk is directed to remand this case, forthwith.

## I. BACKGROUND

Plaintiff Laureen Desmangles was born on July 13, 1962 and is 59 years old as of the date of this opinion and order. (Admin. R. at 125, Dkt. No. 8.) Desmangles and her husband Kenneth Desmangles have been married since 1993 and together they have one daughter. (*Id.* at 353.) From 1986 to 1999, Desmangles worked for Amtrak as a customer service representative. (*Id.* at 45.) After working for Amtrak, Desmangles worked part time as a merchandiser for News

Market America. (*Id.* at 46.) In 2006, Desmangles began working for First Midwest Bank. (*Id.* at 46.)

In 2007, Desmangles was diagnosed with fibromyalgia. (*Id.* at 788.) Desmangles then began treatment with rheumatologist Dr. Veena Nayak. (*Id.* at 49.) Under Dr. Nayak's care, Desmangles was prescribed various medications and underwent physical therapy. (*Id.* at 49-50.) These treatments provided some relief, but Desmangles continued to experience severe pain and mobility issues. (*Id.* at 50.) Desmangles' pain escalated to the point that she was unable to sit for long periods of time and she struggled to perform basic work tasks due to tightened muscles. (*Id.* at 47-48.) As a result, Desmangles left First Midwest Bank in 2014 (*Id.* at 45, 47.) Desmangles has not worked since 2014.

Desmangles filed her initial claim for social security disability benefits on August 12, 2015, and listed the following illnesses: polyarthritis, osteoarthritis, pubic symphysis, fibromyalgia, and left hip tendon injury. (*Id.* at 125-26.) Desmangles alleged that she had been unable to function and/or work as of April 25, 2014. (*Id.* at 126.) The Social Security Administration ("SSA") denied Desmangles' application at the initial and reconsideration stages of review, after which she requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 135, 150, 199-200.) On September 20, 2017 the ALJ held a

hearing at which Desmangles was represented by counsel and testified (*Id.* at 78-124). On February 28, 2018, the ALJ issued a decision denying Desmangles' claim (*Id.* at 156-65). On July 1, 2019 the Appeals Council vacated the first ALJ's decision and remanded for further proceedings before a new ALJ. (*Id.* at 173-75.)

Desmangles, again represented by counsel, testified at the second hearing before the new ALJ on November 27, 2019. (*Id.* at 33-77.) Desmangles testified that each day she experiences pain at an 8 to 9 out of 10. (*Id.* at 52.) She does not sleep through the night because of throbbing pain. (*Id.* at 61.) She explained that as a result of her fibromyalgia her "muscles and everything will just freeze up." (*Id.* at 48.) Desmangles reports that she can stand for no more than 15 minutes before needing to sit down. (*Id.* at 58.) The pain has also impacted her ability to do household chores. (*Id.* at 52.) Desmangles estimates it takes her five days to complete three loads of laundry. (*Id.*) She is unable to cook large meals and only prepares simple dishes, liking boiling an egg or toast. (*Id.* at 57.) Desmangles reports that getting dressed is exhausting and she often remains in pajamas all day. (*Id.* at 58.) She is also unable to do her own hair, relying on a hairdresser and then later wrapping it in a scarf. (*Id.* at 59.) Simple daily

activities can consume an entire day because she requires extended periods of rest after completing a single task. (*Id.*at 59.)

Desmangles reported that since 2014 she has relied heavily on her husband, daughter, and other family members or neighbors for support (*Id.* at 60.) Until September 2019, Desmangles' husband Kenneth did most of the driving and the grocery shopping. (*Id.* at 43, 57.) In September 2019, Kenneth was diagnosed with cancer. (*Id.* at 43-44, 54.) Despite her pain and fatigue, Desmangles is reassuming various household responsibilities in order to care for Kenneth. Desmangles reports, however, that just driving Kenneth to chemotherapy is exhausting and requires that she nap while he is receiving treatment. (*Id.* at 54.) Desmangles further reports that while she is able to make short trips to smaller grocery stores, she has started ordering groceries for delivery to ensure her family's needs are met and Kenneth is able to eat healthier. (*Id.* at 57-58.)

On January 27, 2020 the new ALJ again denied Desmangles' claim for benefits. (*Id.*at 10-32.) In rendering her opinion, the ALJ relied on the SSA's five-step process for determining whether an individual is disabled. (*Id.* 14-15 (citing 20 C.F.R. 404.1520(a).) The ALJ first considers whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. § 404.1520(a)(4)(i). She then determines at

step two whether the claimant's physical or mental impairment is severe and meets the twelve-month duration requirement noted above. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ compares the impairment or combination of impairments found at step two to a list of impairments identified in the regulations. The specific criteria that must be met to satisfy a listing are described in Appendix 1 of the regulations. 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairments meet or "medically equal" a listing, the individual is considered to be disabled, and the analysis concludes. If the listing is not met, the analysis proceeds to step four. 20 C.F.R. § 404.1520(a)(4)(iii).

Before addressing the fourth step, the ALJ must assess a claimant's residual functional capacity ("RFC"), which defines his or her exertional and non-exertional capacity to work. The ALJ then determines at step four whether the claimant is able to engage in any of her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can do so, she is not disabled. *Id.* If the claimant cannot undertake her past work, the ALJ proceeds to step five to determine whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. An individual is not disabled if he or she can do work that is available under this standard. 20 C.F.R. § 404.1520(a)(4)(v).

Here, at step 1 the ALJ concluded that Desmangles had not engaged in substantial gainful employment since her claimed onset date of April 25, 2014. (Admin R. at 15.) At step 2, the ALJ found that Desmangles had the following severe impairments: degenerative disc disease, cervical spine; fibromyalgia; trochanteric bursitis; and osteoarthritis, bilateral feet. (*Id.*) At step 3, however, the ALJ concluded that Desmangles did not have an "impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments" in the federal regulations. (*Id.* at 16.)

Moving to step 4, the ALJ concluded that Desmangles was unable to engage in any of her prior relevant work. (*Id.* at 25.) Finally, at step 5, the ALJ considered Desmangles' RFC, including Desmangles' testimony regarding her daily experience with pain, and determined that she was able to perform sedentary work. (*Id.* at 17-25.) On April 23, 2020, the Appeals Council denied Desmangles' second request for review, making the ALJ's decision the final word of the Commissioner (*Id.* at 1-6). *See Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015); 20 C.F.R. § 404.981.

The medical evidence in this case spans hundreds of pages, reflecting Desmangles' treatment for fibromyalgia and related pain by primary care physicians, rheumatologists, neurologists, and physical therapists. Because the decision turns on the ALJ's

treatment of Desmangles' alleged symptoms and the weight accorded the opinions of Desmangles' treating physicians, the Court focus on those categories of evidence in its opinion and order.

## II. **LEGAL STANDARD**

Judicial review of the SSA's decision is permitted pursuant to 42 U.S.C. § 405(g), which provides that the SSA's findings of fact are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g). Under the substantial evidence standard, the Court looks to an existing administrative record and asks, "whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019) (quotation omitted). The threshold for evidentiary sufficiency is not high; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The reviewing court is not "to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner." *Burmester v. Berryhill,* 920 F.3d 507, 510 (7th Cir. 2019) (citing *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003)). If substantial evidence supports the disability determination, the reviewing court must affirm even if "reasonable minds could differ" concerning whether the petitioner is disabled. *Id.*

## III. DISCUSSION

Desmangles raises two objections to the ALJ's determination. First, she argues that the ALJ made an improper credibility determination and did not fairly assess her reports of pain or her other symptoms. Second, she argues that the ALJ failed to accord adequate weight to the opinions rendered by her treating physicians. The Court addresses each argument below.

### A. Desmangles' Reports of Pain and Other Symptoms

Desmangles argues that this case must be reversed or remanded because the ALJ erred by disregarding her testimony regarding the severity of her symptoms when analyzing their limiting effect on her daily life and her ability to engage in meaningful employment activities. Such an error, if present, impacts the ALJ's analysis of Desmangles' RFC and her conclusion at step 5 regarding whether a substantial number of jobs exist that the Desmangles can perform in light of her RFC, age, education, and work experience.

The SSA has set forth a two-step process for evaluating a claimant's own description of her impairments. *See* Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017). First the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* at *3.

Once such an impairment is identified, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* In evaluating a claimant's symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, . . . and justify the finding with specific reasons." *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009). The Court will not substitute its judgment for the ALJ's when considering the weight of the evidence and the ALJ's determination regarding the claimant's subjective complaints will be reversed only if "patently wrong." *Jones v. Astrue,* 623 F.3d 1155, 1160 (7th Cir. 2010).

### 1. *Fibromyalgia*

The ALJ rejected Desmangles' characterization of the intensity of her pain, finding it "inconsistent with the medical evidence and other evidence suggesting she would be capable of work within the indicated residual functional capacity." (Admin. R. at 18.) The Court finds that the ALJ erred at step two of the process, by over relying on objective medical evidence to evaluate Desmangles' testimony regarding her fibromyalgia pain.

The ALJ thoroughly summarized Desmangles' lengthy medical history and acknowledged Desmangles' consistent reports of pain

and fatigue and her physicians' observations of tenderness, mild inflammation in her pelvic joints, and use of a cane to ambulate. When weighing the evidence, however, the ALJ focused on the physicians' notes which indicated that Desmangles was doing well and that she had good range of motion, fairly normal hip strength, and normal or slightly weakened grip strength. The ALJ then concluded that the positive medical findings undermined Desmangles' description of her pain and abilities and indicated that she is able to perform sedentary work. This reasoning fails.

Desmangles' testimony was not that she constantly experienced pain that was at an 8 to 9 out of 10. Instead, she explained that she experiences such pain on a daily basis, typically after prolonged activity. It is consistent with the record that Desmangles would experience fatigue and pain as she struggled through daily life, and not exhibit those same symptoms while undergoing brief tests during a doctor's visit. Whether she can sit or stand during a doctor's visit or has a normal grip or range of motion during a brief test, says nothing of her ability to sustain these activities during an eight-hour workday.

Further, this reasoning misunderstands fibromyalgia. The Seventh Circuit has repeatedly cautioned that "[t]he extent of fibromyalgia pain cannot be measured with objective tests aside from a trigger-point assessment." *Gerstner v. Berryhill,* 879 F.3d

257, 264 (7th Cir. 2018); *see also Akin v. Berryhill,* 887 F.3d 314, 318 (7th Cir. 2018). The ALJ must be mindful that the symptoms of fibromyalgia are "entirely subjective" and "[t]here are no laboratory tests for [its] presence or severity." *Sandra R.W. v. Comm'r of Soc. Sec.,* 2018 WL 5717202, at *5 (S.D. Ill. Nov. 1, 2018) (quoting *Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir. 1996)); *Gebauer v. Saul,* 801 F. App'x 404, 409 (7th Cir. 2020) (describing fibromyalgia as "marked by subjective and fluctuating symptoms."). For this reason, "courts have been very clear that objective testing is not a reliable standard by which an ALJ can go about assessing the credibility of a claimant's fibromyalgia claims." *Heuschmidt v. Colvin,* 2015 WL 7710368, at *5 (N.D. Ill. Nov. 30, 2015).

The Court recognizes that most claimants do not have such a severe case of fibromyalgia that they are totally disabled, and that may be true of Desmangles as well. *Sarchet,* 78 F.3d at 307. Here, however, the ALJ incorrectly relied on the absence of objective medical tests which confirm the intensity of Desmangles' pain, to discount her subjective assessment of pain. This type of analysis is insufficient to provide the necessary logical bridge between the evidence and the ALJ's conclusion that Desmangles' characterization of the severity, persistence, and limiting effects of her fibromyalgia pain and fatigue are not credible. For

this reason alone, the case must be remanded for further evaluation of this issue.

## *2. Daily Activities*

The ALJ further incorrectly discounted Desmangles' testimony regarding the extent of her pain, citing her daily activities, including household chores and speculation that she was able to exercise. Based on the record, neither are an appropriate basis for discounting Desmangles' testimony.

According to the ALJ, Desmangles is able to "do laundry, mak[e] breakfast, driv[e], and go [] grocery shopping independently." (Admin. R. at 18.) The Seventh Circuit, however, has repeatedly cautioned against "equating [household] activities with the challenges of daily employment in a competitive environment, especially when the claimant is caring for a family member." *Beardsley v. Colvin,* 758 F.3d 834, 838 (7th Cir. 2014). This is of course because "minimal daily activities, such as those in issue, do not establish that a person is capable of engaging in substantial physical activity." *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000), *as amended* (Dec. 13, 2000). This is particularly true here where Desmangles' testimony made clear that the household chores cited by the ALJ were done out of necessity and that she required substantial rest after completing these simple tasks. For example, Desmangles explained that she is only

able to cook simple meals and it takes her days to complete the laundry. She also stated that while she is able to grocery shop in small stores for short periods of time, she now relies on grocery delivery for larger purchases. Finally, Desmangles resumed driving and grocery shopping in 2019 for one reason—her husband was diagnosed with cancer. It is unfathomable to say that her ability to fight through the pain in order to ensure her ailing husband gets the care he needs is a sign that she has overstated her pain. The ALJ's opinion also ignores the various daily tasks Desmangles struggles with, including getting dressed and doing her own hair. In short, the record clearly evidences that Desmangles is significantly limited when performing daily activities and as such this "does not necessarily translate into the ability to work full time." *Roddy v. Astrue,* 705 F.3d 631, 639 (7th Cir. 2013).

The ALJ also discounted Desmangles' reports of fatigue and pain based on her doctors' recommendations that she exercise regularly. To start, "general recommendations of physical activity do not contradict [a claimant's] alleged limits from fibromyalgia." *Gerstner,* 879 F.3d at 264. Here, the cited recommendations are generic and offer no additional guidance on the type of activity the physician had in mind, given. *See id.* ("Because the examining physician and the physician's assistant did not elaborate on the type, duration, or intensity of the

physical activity they would recommend, these medical sources may have had in mind activity that was within [claimant's] alleged limits — for instance walking a few times a week for a few minutes each time.")

Contrary to the ALJ's opinion, there is also no evidence that Desmangles was actually able to exercise. (Admin R. at 22 ("Claimant was admonished to exercise, regularly and was *apparently* doing so.") (emphasis added).) Instead, Desmangles' testimony was that her daily activities are consumed with household chores and caring for her husband. This undermines any conclusion that she was engaging in exercise activity beyond her alleged limits.

For all these reasons, the ALJ drew inapposite inferences from Desmangles' daily activities when determining the credibility of Desmangles' statements regarding the extent of her pain. On remand, the Court directs the ALJ to further develop the record on the extent of Desmangles' daily activities, including household chores and exercise, and the amount of assistance she receives while completing any such task before using this information to evaluate Desmangles' testimony.

### *3. Course of Treatment*

The ALJ also discredited Desmangles' description of the intensity and pervasiveness of her pain based on her conservative

course of treatment. Desmangles testified that the various medications she took did not eliminate her pain. In response the ALJ asked why she continued taking the medication, knowing they did not work. Desmangles explained that she complied with all suggestions from her doctor, because she no longer wanted to be sick and wanted to provide for her family. Later, Desmangles testified that although water therapy provided some relief, she had to discontinue that treatment because it was not covered by insurance and too expensive. When looking at Desmangles' characterization of her pain, in light of her treatment, the ALJ's opinion failed to take these reasons for her conservative treatment into account.

Moreover, during the hearing the ALJ failed to ask Desmangles why she did not pursue more aggressive treatments. The ALJ cannot fail to ask a question and then use the lack of information to discredit Desmangles' testimony. For these reasons, Desmangles' failure to be prescribed or request more invasive or aggressive medical treatments does not undermine her descriptions of her disabling pain. *Beardsley v. Colvin,* 758 F.3d 834, 840 (7th Cir. 2014) (finding an ALJ may not draw inferences regarding treatment without first exploring the claimant's explanations regarding treatment).

## B. Treating Physician Opinions

Desmangles also argues that the ALJ erred by failing to accord adequate weight to the opinions offered by her primary care physicians, Dr. Warakomski and Dr. Shah. The Court declines to reach an opinion on this issue. Instead, the Court directs the ALJ to review the weight accorded these opinions in light of the Court's rulings regarding objective medical evidence in fibromyalgia cases. *See, supra,* Section III.A.1. The ALJ's review of the weight accorded these opinions should also reflect the SSA's guidance on the evaluation of Fibromyalgia, including the fluctuating nature of a claimant's pain. Soc. Sec. Ruling, SSR 12-2p; Titles II & XVI: Evaluation of Fibromyalgia, SSR 12-2P (S.S.A. July 25, 2012)

In addition, at this point, the disputed opinions of Dr. Warakomski and Dr. Shah are both more than six years old. Neither reflects Desmangles' current medical condition. Accordingly, on remand the Court directs claimant to submit for the ALJ's consideration updated medical records, including functional assessments and opinions from both her primary care physician and rheumatologist. The ALJ should also request additional information as needed to render an opinion consistent with SSR 12-2P.

## IV. CONCLUSION

For the reasons stated herein, the Commissioner's motion for summary judgment (Dkt. No. 19) is denied. The Court vacates the ALJ's findings and remands to the Agency for proceedings consistent with this opinion.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 7/15/2021